Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| RAFAEL ALFREDO CINTRÓN PERALES<br><br>Peticionario<br><br>Ex Parte | KLCE202301430<br><br>Consolidado<br><br>KLCE202400090 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Municipal de Guaynabo<br><br>Caso núm.: GB2020CV00006 (202)<br><br>Sobre: Carta Testamentaria |

Panel integrado por su presidenta la jueza Ortiz Flores, el juez Rivera Rivera Torres, la jueza Rivera Pérez y el juez Campos Pérez.

**Rivera Torres, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 6 de febrero de 2024.

Comparece ante este tribunal apelativo el Lcdo. Rafael Cintrón Perales (licenciado Cintrón Perales o el peticionario) mediante el recurso de *Certiorari* de epígrafe solicitándonos la revocación de una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Guaynabo (el TPI), el 5 de octubre de 2023, notificada el 10 del mismo mes y año. También nos peticiona que revoquemos la *Orden* emitida el 19 de diciembre de 2023, notificada el 21 de diciembre siguiente.[1] Mediante estos dictámenes, el foro recurrido autorizó la intervención del Sr. José M. Toral Muñoz en representación de la Fundación Rigoberto Figueroa Figueroa (los recurridos), más decretó que el albacea tiene que presentar en el caso los informes trimestrales; así como copia de los estados de cuenta relacionados al caudal.

---

[1] Ambos recursos fueron consolidados. Véase nuestra *Resolución* del 24 de enero de 2024.

Número Identificador
SEN2024 _____

Por los fundamentos que expresaremos a continuación, expedimos los autos de *Certiorari* solicitados y revocamos los dictámenes recurridos.

**I.**

El 3 de enero de 2020, el licenciado Cintrón Perales presentó una petición *ex parte* solicitando la expedición de cartas testamentarias para acreditar su autoridad legal como albacea de la sucesión del Sr. Rigoberto Figueroa Figueroa. El 5 de febrero de 2020, el TPI expidió las cartas testamentarias según solicitadas.

El 25 de mayo de 2023, la Fundación Rigoberto Figueroa Figueroa (la Fundación), una organización sin fines de lucro representada por su presidente, el Sr. José M. Toral Muñoz (señor Toral Muñoz), comparecieron mediante un escrito titulado *Moción de Intervención y Solicitud Orden*.[2] Alegaron que en el Testamento Abierto otorgado el 5 de abril de 2019, ante la Notario Lcda. Paola J. Figueroa Alemañy, el señor Figueroa Figueroa instituyó como única y universal heredera a la Fundación. En síntesis, adujeron que el licenciado Cintrón Perales ha incumplido con su deber de rendir los informes trimestrales que requiere la ley.

Así las cosas, el 6 de junio de 2023, el licenciado Cintrón Perales presentó un escrito titulado *Urgente Oposición a Moción de Intervención y Solicitud de Orden*, en el cual solicitó que se denegara la intervención, toda vez que por tratarse de un proceso *ex parte* esta no procedía.[3] Señaló que las cartas testamentarias solo van dirigidas a su expedición, por lo que el recurso para solicitar los reportes financieros de la Fundación se debía presentar dentro de un proceso ordinario. Agregó, además, que la petición de intervención fue instada pasado más de un año desde que se otorgaron las cartas testamentarias, por lo que nunca se cuestionó la idoneidad del

---

[2] Véase el Apéndice del Recurso KLCE202301430, a las págs. 23-26.
[3] *Íd.*, a las págs. 27-33.

albacea. También arguyó que el señor Toral Muñoz abandonó sus funciones como presidente de la Fundación y que los informes financieros de la fundación siempre han estado disponibles.

El 28 de junio de 2023, el TPI concedió un término al licenciado Cintrón Perales para presentar los informes trimestrales correspondientes a los años 2020, 2021, 2022 y el primer trimestre del 2023.[4] A su vez, el foro primario señaló vista para el 12 de julio de 2023 para atender la petición de intervención solicitada por los recurridos. En cumplimiento con dicha *Orden,* el peticionario sometió los informes trimestrales del 2020 al 2023.[5]

El 5 de octubre de 2023, el TPI dictó la *Resolución* recurrida en la cual resolvió lo siguiente:[6]

> 1. Se autoriza la intervención del Dr. José M. Toral Muñoz como presidente de la Junta de Directores de la Fundación Rigoberto Figueroa Figueroa, única y universal heredera del caudal.
> 2. El Albacea Rafael A. Cintrón Perales tiene la obligación, impuesta por ley, de someter al Tribunal Informes Trimestrales sobre su gestión.
> 3. Como representante de la Fundación, el interventor tiene derecho a examinar los Informes Trimestrales que, por disposición de ley, está obligado el Albacea someter al Tribunal.

El 25 de octubre de 2023, el peticionario sometió una moción intitulada *Moción de Reconsideración de la Resolución del Honorable Tribunal.* A su vez, los recurridos sometieron su oposición. El 10 de noviembre de 2023, el TPI declaró *No Ha Lugar* el petitorio.[7]

El 15 de diciembre de 2023, los recurridos presentaron una *Moción Urgente Solicitando Orden Sobre Informes* en la cual adujeron y citamos por su pertinencia:[8]

> Recientemente la parte interventora y heredera ha[n] tenido la oportunidad de examinar lo sometido por el albacea como supuestos informes trimestrales. **Los mismos reflejan un craso incumplimiento con las obligaciones** de informar sobre los ingresos y gastos del caudal hereditario. Los informes se limitan a

---

[4] *Íd.*, a la pág. 78.
[5] Véase el Apéndice Suplementario de los recurridos en el recurso KLCE202301430, a las págs. 063-088.
[6] Véase el Apéndice del Recurso KLCE202301430, a la pág. 8.
[7] *Íd.*, a la pág. 1.
[8] Véase el Apéndice Suplementario de los recurridos en el recurso KLCE202301430, a la pág. 089.

mostrar totales de ingresos y gastos, desconociéndose de dónde provienen los ingresos y **en qué el albacea está gastando el dinero de la herencia**. [Énfasis nuestro]

Por tanto, los recurridos solicitaron al TPI que ordenara al licenciado Cintrón Perales a producir copia de todos los estados de cuentas del caudal. Posteriormente, estos presentaron una moción suplementaria en la cual <u>nuevamente cuestionaron la información sometida y la forma en que fueron realizados los informes</u>.[9]

El 21 de diciembre, el TPI dictó la *Orden* recurrida disponiendo:[10]

EVALUADA LA *MOCI[Ó]N URGENTE SOLICITANDO ORDEN SOBRE INFORMES* AS[Í] COMO EL ESCRITO SUPLEMENTARIO PRESENTADOS POR LA PARTE INTERVENTORA, RESOLVEMOS LO SIGUIENTE:

CONSIDERANDO **QUE EL ALBACEA INCUMPLI[Ó] CON LA OBLIGACI[Ó]N** QUE LE IMPONE EL ART[Í]CULO 587 DEL C[Ó]DIGO DE ENJUICIAMIENTO CIVIL, SE DECLARA HA LUGAR LA SOLICITUD DE LOS INTERVENTORES. SE CONCEDE 20 D[Í]AS AL ALBACEA PARA QUE PROVEA COPIA DE LOS ESTADOS DE CUENTA RELACIONADOS Y/O CREADOS EN RELACI[Ó]N AL CAUDAL. [Énfasis nuestro]

Por último, el 10 de enero de 2024, el TPI dictó una *Orden* señalando la vista para el 7 de febrero siguiente, a los efectos de que el peticionario muestre causa por la cual <u>no deba ser encontrado incurso en desacato</u>.[11]

Inconforme con la *Resolución* del 5 de octubre de 2023 y con la *Orden* del 21 de diciembre de 2023, el peticionario acude ante este foro apelativo imputándole al foro de instancia la comisión de los siguientes errores:

A. <u>KLCE202301430</u>

PRIMERO: ERRÓ EL TPI AL ASUMIR JURISDICCIÓN EN UN PROCESO EX PARTE SOBRE CARTAS TESTAMENTARIAS YA INACTIVO, Y PERMITIR LA INTERVENCIÓN DE UNA PARTE, POR SÍ Y A NOMBRE DE LA FUNDACIÓN HEREDERA, PARA SOLICITAR LOS INFORMES TRIMESTRALES DE CUENTAS DEL

---

[9] Véase el Apéndice del Recurso KLCE202400090, a la pág. 16.
[10] *Íd.*, a la pág. 15.
[11] *Íd.*, a la pág. 25.

ALBACEA CUANDO DICHA INFORMACIÓN HA ESTADO DISPONIBLE Y A PESAR DE HABERSE IMPUGNADO LA LEGITIMACIÓN ACTIVA DEL SR. JOSÉ TORAL COMO DIRECTOR EN DICHA ENTIDAD POR ABANDONO DE SUS CARGOS Y RESPONSABILIDADES, ASÍ COMO DE ENRIQUECIMIENTO INJUSTO.

SEGUNDO: ERRÓ EL TPI AL DETERMINAR QUE ES OBLIGATORIO LA PRESENTACIÓN DE INFORMES TRIMESTRALES EN EL TRIBUNAL A PESAR DE SER LA FUNDACIÓN UN HEREDERO DETERMINADO.

TERCERO: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE EL SR. TORAL MUÑOZ TIENE LEGITIMACIÓN ACTIVA EN ESTE CASO PARA PRESENTAR UNA SOLICITUD DE INTERVENCIÓN A NOMBRE DE LA FUNDACIÓN Y OBVIAR ASÍ EL PROCESO DE SOLICITUD PARA RADICAR PLEITOS A LA JUNTA DE DIRECTORES.

B. KLCE202400090

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, Y ABUSÓ DE SU DISCRECIÓN E INCURRIÓ EN ERROR MANIFIESTO, AL DETERMINAR EN SU RESOLUCIÓN DEL 21 DE DICIEMBRE DE 2023, QUE EL ALBACEA HABÍA INCUMPLIDO CON LA OBLIGACIÓN QUE LE IMPONE EL ARTÍCULO 587 DEL CÓDIGO DE ENJUICIAMIENTO CIVIL A PESAR DE HABER SOMETIDO LOS INFORMES. DE ESTA FORMA, DA PASO UNA IMPUGNACIÓN POR LA PARTE INTERVENTORA QUE REQUIERE UN PROCEDIMIENTO CONTENCIOSO ORDINARIO QUE GARANTICE UN DESCUBRIMIENTO DE PRUEBA PERTINENTE, UNA VISTA PREVIA CON TODOS LOS DERECHOS PARA PRESENTAR PRUEBA A SU FAVOR Y CONTRAINTERROGAR TESTIGOS, LO CUAL CONSTITUYE UNA VIOLACIÓN AL DEBIDO PROCEDIMIENTO DE LEY; ADEMÁS DE HABER ACTUADO SIN JURISDICCIÓN, CON PASIÓN, PREJUICIO, PARCIALIDAD Y ERROR MANIFIESTO; Y CUYAS DETERMINACIONES DE DERECHO ESTÁN EN CONFLICTO CON EL BALANCE MÁS RACIONAL, JUSTICIERO Y JURÍDICO DE LA CONTROVERSIA.

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, Y ABUSÓ DE SU DISCRECIÓN E INCURRIÓ EN ERROR MANIFIESTO, AL DETERMINAR EN SU RESOLUCIÓN DEL 19 DE DICIEMBRE DE 2023, QUE EL ALBACEA DEBÍA PROVEER COPIA A LA PARTE INTERVENTORA DE LOS ESTADOS DE CUENTAS BANCARIOS CORRESPONDIENTES A LA SUCESIÓN, A PESAR DE QUE ES EL PROPIO INTERVENTOR, SR. TORAL MUÑOZ, QUIEN ES PRESIDENTE Y TESORERO DE LA JUNTA DE DIRECTORES DE LA FUNDACIÓN RIGOBERTO FIGUEROA FIGUEROA QUIEN, CONFORME A SUS ESTATUTOS, ES EL QUE SE SUPONE TENGA A SU CARGO Y SEA CUSTODIO DE TODOS LOS ESTADOS DE LAS CUENTAS RELACIONADOS Y/O CREADOS EN

RELACIÓN AL CAUDAL, ACTUANDO EL TPI DE ESTE MODO CON PASIÓN, PREJUICIO, PARCIALIDAD Y ERROR MANIFIESTO; Y CUYAS DETERMINACIONES DE DERECHO ESTÁN EN CONFLICTO CON EL BALANCE MÁS RACIONAL, JUSTICIERO Y JURÍDICO DE LA CONTROVERSIA.

El 18 de diciembre de 2023, los recurridos presentaron en el recurso KLCE202301430 un *Memorando en Oposición a la Expedición de Auto de Certiorari.* Posteriormente, presentaron una *Moción en Auxilio de Jurisdicción,* la cual fue declarada *No Ha Lugar.*[12]

De otra parte, en el recurso KLCE202400090 dictamos una *Resolución* el 24 de enero de 2024, ordenándole a los recurridos a expresarse en o antes del 31 de enero del año en curso. Ese mismo día, los recurridos presentaron un *Memorando en Oposición a Expedición de Certiorari …* por entender que el mismo es repetitivo. También solicitaron la imposición del pago de las costas, gastos, honorarios de abogado y sanciones económicas.

El 31 de enero de 2024, los recurridos instaron una *Moción en Cumplimiento de Orden en Oposición a la Expedición del Auto de Certiorari* por lo que damos por cumplida nuestra *Orden* del 24 de enero y decretamos perfeccionado los recursos.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

***El Auto de Certiorari***

La Regla 52.2 (b) de las Reglas de las de Procedimiento Civil, 32 LPRA Ap. V R. 52.2 (b), y la Regla 32(c) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 32 (c), establece que el recurso disponible para revisar resoluciones finales en procedimientos de jurisdicción voluntaria dictadas por el Tribunal de Primera Instancia, tal como el caso de marras, lo es una petición

---

[12] Véase la *Resolución* del 28 de diciembre de 2023.

de *certiorari*. Sin embargo, previo a ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 40, se justifica nuestra intervención, pues distinto al recurso de apelación, este tribunal posee discreción para expedir el auto el *certiorari*. *García v. Padró*, 165 DPR 324, 334 (1999). Por supuesto, esta discreción no opera en el vacío y en ausencia de parámetros que la dirija. *I.G. Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012); *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011).

Precisa recordar que la discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. (citas omitidas)". *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 435 (2013). Así pues, se ha considerado que la discreción se nutre de un juicio racional cimentado en la razonabilidad y en un sentido llano de justicia y "no es función al antojo o voluntad de uno, sin tasa ni limitación alguna. (citas omitidas)". *Íd.* A estos efectos, la Regla 40 de nuestro Reglamento, *supra*, enmarca los criterios que debemos considerar al momento de determinar si procede que expidamos el auto discrecional *certiorari*. *I.G. Builders et al. v. BBVAPR*, supra. Dicha regla establece lo siguiente:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En síntesis, la precitada regla exige que, como foro apelativo, evaluemos si alguna de las circunstancias enumeradas anteriormente está presente en la petición de *certiorari*. De estar alguna presente, podemos ejercer nuestra discreción e intervenir con el dictamen recurrido. De lo contrario, estaremos impedidos de expedir el auto, y por lo tanto deberá prevalecer la determinación del foro recurrido. Además, es norma trillada que un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. *Pueblo v. Rivera Santiago*, 176 DPR 559, 581 (2009). También, los criterios antes transcritos sirven de guía para poder determinar, de manera sabia y prudente, si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra el caso. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008).

### *Jurisdicción voluntaria y las Cartas Testamentarias*

En Puerto Rico hay una distinción entre los asuntos de jurisdicción voluntaria y los de jurisdicción contenciosa. *RPR & BJJ, Ex Parte*, 207 DPR 389, 404 (2021). La jurisdicción voluntaria se define como "[a]quella en que no existe controversia entre las partes; la que no requiere la dualidad de las mismas". G. Cabanellas, *Diccionario Enciclopédico de Derecho Usual*, Ed. Heliasta, Tomo V,1994, a la pág. 54. Se entiende, además, como "aquel ámbito de asuntos en que, por disposición de ley y a solicitud de los interesados, se requiere la intervención del juez para su tramitación, aun cuando no se promueva controversia alguna entre las partes." [nota al calce omitida]." *RPR & BJJ, Ex Parte*, supra. Incluso, el inciso (b) de la Regla 3.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 3.1, establece que:

(b) El tribunal tendrá facultad para conocer de los procedimientos de jurisdicción voluntaria. Se podrá acudir al tribunal con un recurso de jurisdicción voluntaria con el fin de consignar y perpetuar un hecho **que no sea objeto de una controversia judicial** en ese momento y que **no pueda resultar en perjuicio de una persona cierta y determinada**. [Énfasis nuestro]

De otra parte, como es sabido el albacea es la persona designada por el testador para ejecutar su última voluntad. *Pino Development Corp. v. Registrador*, 133 DPR 373, 389 (1993). En lo aquí pertinente, el Artículo 597 del Código Enjuiciamiento Civil de 1933, 32 LPRA sec. 2571, dispone:

Todo albacea que acepte el nombramiento hecho a su favor en un testamento deberá entregar al funcionario en cuya oficina se halla protocolado el testamento una aceptación del cargo por escrito, acompañada de un juramento, también por escrito, comprometiéndose a cumplir, del mejor modo que le fuere dable, sus obligaciones como albacea, sin lo cual no podrá hacerse cargo de los bienes del finado. La sala del Tribunal de Primera Instancia de la última residencia del finado o del lugar en que radican sus bienes, mediante la presentación de una certificación del notario u otro funcionario competente, en que conste haberse archivado dicha aceptación y juramento oficial, **expedirá cartas testamentarias a favor del albacea, las cuales constituirán prueba de su autoridad**. Tan pronto como un administrador haya prestado su fianza y juramento oficial, el juez o tribunal que lo hubiere nombrado expedirá a su favor cartas de administración bajo su sello, en testimonio de su autoridad. [Énfasis nuestro]

En *Vilanova et. al v. Vilanova et. al*, 184 DPR 824, 858 (2012) nuestro alto foro reiteró que, en la mayoría de los casos, el procedimiento para la expedición de las cartas testamentarias es uno de jurisdicción voluntaria, que se tramita en el despacho del juez de primera instancia <u>sin mayores incidentes</u>. Además, en *RPR & BJJ, Ex Parte,* supra, el Tribunal Supremo reiteró que: "En un caso de jurisdicción voluntaria "no se promueve acción alguna entre partes conocidas y determinadas. Los peticionarios son los únicos interesados en el remedio que se solicita. [...]" *Íd.*, a la pág. 405.

Por otra parte, si bien un procedimiento de jurisdicción voluntaria pudiera convertirse en uno contencioso, cuando compareciera una parte oponiéndose o pretendiendo un interés

adverso, dicho trámite debe llevarse de forma tal que garantice los postulados de la Regla 1 de Procedimiento Civil y debe estar libre de formalismos. *Íd.*, a las págs. 405-406. En los casos de carta testamentarias se ha permitido la oposición de una parte a los **únicos efectos de impugnar la idoneidad del albacea nombrado**. En esa situación, "... lo que procede es convertir el proceso en uno contencioso y seguir el trámite ordinario". *Vilanova et. al v. Vilanova et. al,* a la pág. 858.

### III.

En esencia, el licenciado Cintrón Perales argumentó que el foro de primera instancia erró al permitir que el procedimiento de jurisdicción voluntaria de Cartas Testamentarias se convirtiera en un procedimiento contencioso al permitir la intervención de los recurridos. Por otra parte, planteó que el señor Toral Muñoz no puede instar pleitos a nombre la Fundación sin una Resolución Corporativa que así lo autorice.

Examinados los recursos al palio de los criterios de la Regla 40, determinamos expedir por entender que la etapa en que se encuentra el procedimiento es el más propicio para su consideración. De igual manera, los remedios y la disposición de las decisiones recurridas son contrarios a derecho. Por estar los errores relacionados entre sí, los discutiremos conjuntamente.

De umbral destacamos que no existe duda alguna en cuanto al hecho de que el Albacea Testamentario tiene unos deberes respecto a los bienes del causante, esto es, la formación de inventario, rendir cuentas trimestrales y rendir la cuenta final.[13] Sin embargo, estos difieren del procedimiento para la expedición de las cartas testamentarias.[14] Nos explicamos.

---

[13] Véanse, los Artículos 568, 587 y 588 del Código de Enjuiciamiento Civil, 32 LPRA secs. 2401, 2511 y 2512, respectivamente.
[14] A manera persuasiva véase *Yolenis L. Simoza González, EX PARTE* KLCE201701472.

De las mociones presentadas ante el foro recurrido surge con meridiana claridad que los asuntos planteados por la Fundación constituyen una genuina controversia que amerita ser atendida en un procedimiento contencioso. Si bien la Fundación es la única y universal heredera de los bienes del Sr. Rigoberto Figueroa Figueroa, y tiene el derecho a ser informada de las gestiones realizadas por el peticionario, el procedimiento de jurisdicción voluntaria no es el adecuado para impugnar su incumplimiento como albacea. Además, no se cumple con los postulados de la Regla 1 de las Reglas de Procedimiento Civil permitir que en el presente caso se ventile una causa de acción ordinaria predicada en la alegada falta al deber de fiducia y lealtad del aquí peticionario como albacea. En este sentido, resulta improcedente atender sus reclamos dentro de un proceso no contencioso, **el cual ya culminó con la expedición de las cartas testamentarias**. En consecuencia, erró el TPI al conceder la intervención de la Fundación **tres años después de haber sido expedidas las cartas testamentarias** a favor del peticionario. Constituye un error de derecho permitir que el caso de epígrafe se convierta en un pleito adversativo, cuando a todas luces, será uno extremadamente contencioso.

De otro lado, puntualizamos que también existe una controversia genuina en cuanto a la legitimación del señor Toral Muñoz para instar una causa de acción como presidente de la Fundación sin la autorización de la Junta de Directores (la Junta) emitida mediante una Resolución Corporativa. Incluso, en sus escritos el peticionario argumentó que en contra del señor Toral Muñoz se instó una demanda por el abandono de sus funciones en la Fundación. Sin duda alguna de estas alegaciones, unidas a los escritos y documentos presentados ante esta *Curia,* surge una disputa genuina entre el peticionario y el señor Toral Muñoz, quien fue originalmente nombrado como tesorero en la Junta por el Sr.

Rigoberto Figueroa Figueroa (QEPD), que requiere se dilucide en un pleito independiente. Por lo cual, existe controversia en cuanto a que la Junta haya sido constituida conforme a los *Estatutos Corporativos (By Laws)* de la Fundación.[15] Al respecto, precisamos que en el Artículo 13, inciso 1, de los *Estatutos Corporativos (By Laws)* se estableció que la Junta es la encargada del gobierno, administración y representación de la Fundación.[16] En fin, forzoso es concluir, que las controversias aquí trabadas requieren la autorización de la Junta de Directores para poder llevar a cabo la intervención judicial. Asunto que no puede ser atendido en un procedimiento de jurisdicción voluntaria.

Por último, solo nos resta advertir que, con respecto a los señalamientos de la obligación del albacea de presentar las cuentas trimestrales, la misma está mandatada por el Artículo 587 del Código de Enjuiciamiento Civil, *supra.* De igual manera, este precepto exige ponerlas de manifiesto en la secretaría del tribunal "a disposición de cualquiera de las partes." *Íd.* No obstante, este mandato legal, reiteramos que cualquier controversia que surja de estos informes, así como la imputación de faltas al albacea son reclamos a ser dilucidados en un pleito independiente. Por ende, se hace menester apuntalar que el foro *a quo* actuó incorrectamente al exigir presentar dichos informes y, más aún, dilucidar las controversias relativas a estos dentro de la petición de las cartas

---

[15] Obsérvese que en el *Memorando en Cumplimiento de Orden …* los recurridos señalan que "Cintrón Perales intentó tomar control de la Fundación haciéndose pasar falsamente como miembro de su Junta de Directores..." Además, se describió al aquí peticionario como uno "incumplidor y recalcitrante." *Íd.*, a las págs. 1 y 2.

[16] Véase el Apéndice del Recuso KLCE202301430, a la pág. 63. Asimismo, destacamos que la Junta estará compuesta de tres (3) miembros que ocuparán los cargos de presidente, tesorero y secretario. En un principio la Junta de Directores estuvo compuesta por su presidente y miembro fundador el Sr. Ricardo Figueroa Figueroa (QEPD), el señor **Toral Muñoz** como **tesorero** y el Sr. Juan Cancel Alegría como Secretario. En el Artículo 15 inciso 1 de los *By Laws* el Miembro Fundador designó como sucesor en caso de renuncia, incapacidad o muerte al Sr. Juan Carlos Vega Martínez. Así, "[u]na vez integrado el Sr. Vega Martínez a la Junta de Directores, sus miembros elegirán un nuevo Presidente." *Íd.*, a la pág. 64.

testamentarias. Esto, especialmente, y como explicamos, nunca se impugnó la idoneidad del peticionario como albacea en dicho proceso de jurisdicción voluntaria y se habían expedido las cartas testamentarias más de tres (3) años anteriores a la petición de intervención.

En conclusión, los errores señalados se cometieron.

**IV.**

Por los fundamentos antes expuestos, expedimos los recursos de epígrafe, y revocamos los dictámenes aquí recurridos. En consecuencia, decretamos que las partes deberán instar las causas de acción que incluyan sus reclamos de manera independiente según lo antes resuelto. Asimismo, advertimos que el Sr. Rafael Cintrón Perales deberá cumplir con su responsabilidad de presentar en la Secretaría del foro primario los informes trimestrales, según exige el Código de Enjuiciamiento Civil, *supra*, y conforme a lo previamente determinado.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones